# IN THE COURT OF APPEALS OF IOWA

No. 24-0506
Filed October 2, 2024

**MAYFE PATINO,**
        Petitioner-Appellee,

**vs.**

**NESTOR ALEJANDRO SANCHEZ,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, James N. Daane,

Judge.

        A child support payor appeals from a district court decision requiring him to

pay cash medical support.  **AFFIRMED.**

        Alice S. Horneber of Horneber Law Firm, P.C., Sioux City, for appellant.

        John S. Moeller of John S. Moeller, P.C., Sioux City, for appellee.

        Brenna Bird, Attorney General, and Amy E. Klocke, Assistant Attorney

General, for appellee.

        Considered by Greer, P.J., and Ahlers and Badding, JJ.

**BADDING, Judge.**

As part of a custodial decree from December 2021, Nestor Sanchez was ordered to pay child support and provide a health benefit plan for his child with Mayfe Patino.[1]  Just over two years later, in January 2023, Patino asked child support services[2] to review Sanchez's support obligation.  *See* Iowa Code § 252H.13.  That process resulted in a district court order increasing Sanchez's monthly child support payment to $380 and requiring him to pay $218 in cash medical support per month.  Sanchez appeals, claiming the court erred in requiring him to pay cash medical support when he was ordered to—and did—maintain health insurance coverage for the child.

We start our review of Sanchez's appeal with an overview of the administrative process Patino set in motion in January 2023.  Iowa Code chapter 252H authorizes child support services to review and adjust support orders.  *Id.* § 252H.1.  Child support services served Sanchez with notice of its intent to review his support obligation in July.  The notice asked Sanchez to return a financial statement and advised him that medical support would be included in the review: "We plan to ask the court to order medical support under Iowa Code chapter 252E.  We will look at your income and other facts you give us.  Either or

---

[1] The decree placed the child in the parties' joint legal custody and Patino's physical care.  After both parties filed post-trial motions, the court amended the decree in February 2022 to adjust the allocation of child tax credits and provide Sanchez with a qualified additional dependent deduction for his child support obligation.

[2] The child support recovery unit was renamed "child support services" effective July 1, 2023.  *See* Iowa Code § 252B.2 (2023); Acts 2023 (90 G.A.) ch. 19, S.F. 514, § 844, eff. July 1, 2023.  Because most of the proceedings took place after July 1, 2023, we will refer to the unit by its new name.

both parents may be ordered to provide it." *See id.* § 252H.2(2) (defining "review" to include "an objective evaluation" of the "appropriate monetary amount of support" and "[p]rovisions for medical support").

Sanchez failed to return a financial statement. So child support services obtained his income information from his employer. *See id.* § 252H.6. With that information and the financial statement from Patino, child support services determined that Sanchez's child support obligation should be increased. It also determined that since Patino had a health benefit plan available to cover the child, she should be ordered to provide coverage and Sanchez should be ordered to pay cash medical support under Iowa Code section 252E.1B(2)(e).[3] When Sanchez failed to timely request a hearing under section 252H.8, child support services presented an administrative order for adjustment of his support obligation. *See id.* § 252H.9(1). Before the court could approve the order, Sanchez filed a "resistance to 252H administrative order and request for hearing."

We know from a court reporter memorandum and certificate that a "252H review" hearing was held in January 2024. Our review of the court's order from that original proceeding is de novo. *See id.* § 252H.3(3); *State ex rel. Weber v. Denniston*, 498 N.W.2d 689, 690 (Iowa 1993). But we don't know what took place at the hearing because Sanchez failed to provide us with a transcript. *See In re*

---

[3] Section 252E.1B(2) establishes an order of priority when child support services enters an order for medical support. The last priority is in section 252E.1B(2)(e):

> If a health benefit plan other than public coverage is not available to either parent, and the custodial parent has public coverage for the child, child support services shall enter or seek an order for the custodial parent to provide health care coverage and shall enter or seek an order for the noncustodial parent to pay cash medical support. . . .

*F.W.S.,* 698 N.W.2d 134, 135 (Iowa 2005) ("It is the appellant's duty to provide a record on appeal affirmatively disclosing the alleged error relied upon."). Sanchez's combined certificate stated that a transcript was not "necessary for inclusion in the record on appeal" and identified the issue as "[w]hether a parent who is ordered to provide health insurance for the child(ren) and has obtained health insurance coverage for the child(ren) can be ordered to pay cash medical support." His brief repeats that limited issue. Before getting into the problems with Sanchez's failure to provide us with a full record to review, we conclude that the premise of his claim is incorrect.

In an order entered on February 1, 2024, the district court stated:

> **Medical Support**: [Sanchez] has health care coverage available in which [the child] may be or is enrolled, and the health care coverage is both accessible and reasonable in cost as provided by Iowa Code Chapter 252E and the Guidelines. [Sanchez] shall continue to provide health care coverage as medical support for [the child]. [Sanchez] shall pay cash medical support in the amount of **$218** per month commencing February 1, 2024, and continuing on the same day of each month thereafter for the duration ordered herein.

Child support services moved to amend the order to strike the first two lines that found Sanchez had health care coverage that "is both accessible and reasonable" and required him to provide that coverage, leaving just the cash medical support order. *See* Iowa Code § 252E.1(3) (defining "cash medical support" as "a monetary amount that a parent is ordered to pay to the obligee *in lieu of that parent providing health insurance*" (emphasis added)), (12) (defining "medical support" to mean "*either* the provision of health care coverage *or* the payment of cash medical support" (emphasis added)); Iowa Ct. R. 9.12(3) ("If neither parent has health insurance available at 'reasonable cost,' if appropriate according to Iowa Code

section 252E.1A, the court shall order cash medical support."). The court granted the motion and entered a corrected order on February 8 that only required Sanchez to pay cash medical support.[4] So Sanchez was not "ordered to maintain health insurance coverage" for the child, as he seems to suggest on appeal.

Yet Sanchez argues that he should not have been ordered to pay cash medical support because "a health insurance plan is available and [he] has maintained that health insurance plan for years." And here is where we run into problems from Sanchez's failure to order a transcript of the hearing.

Iowa Code section 252E.1A(3) requires the court to "order as medical support for the child health care coverage if a health benefit plan other than public coverage is available to either parent at the time the order is entered or modified." Availability is a term of art in the medical-support realm. According to section 252E.1A(3), "A health plan is available if the plan is accessible and the cost of the plan is reasonable." Accessibility depends on service area limitations, *see* Iowa Code § 252E.1(1), while the reasonableness of the plan's cost must be determined by examining the "premium cost for a child to the parent ordered to provide coverage." *Id.* § 252E.1A(3)(a)(1). The "premium cost for a child to the parent ordered to provide coverage" means the amount of the premium costs for family coverage "which is in excess of the premium costs for single coverage, regardless of the number of individuals covered under the plan." *Id.* § 252E.1A(3)(d); *see also* Iowa Ct. R. 9.12(2) (further defining "reasonable cost" for health insurance). The

---

[4] The court's order did not direct Patino to provide health care coverage for the child, though no one raises this as an issue on appeal. *Cf.* Iowa Code § 252E.1A(2)–(5), .1B(2)(a)–(e).

limited record does not show whether Sanchez's health benefit plan meets these requirements—or if he even has a plan at all.

Sanchez asserts that "[s]ince prior to 2017, [he] has had a health benefit plan available to himself and his children due to his work as a carpenter and h[is] membership in the Carpenters & Joiners Welfare Plan."[5]  The district court's order after the January 2024 hearing noted that Sanchez "testified and was cross-examined," before detailing some of his employment circumstances.  But the recitation by Sanchez and the district court of the hearing testimony cannot fill the void left by Sanchez's decision to forgo a transcript.  *See Miller v. Giese*, No. 23-1432, 2024 WL 3518280, at *2 (Iowa Ct. App. July 24, 2024); *accord Smith v. Iowa Bd. of Med. Exam'rs*, 729 N.W.2d 822, 828 (Iowa 2007) ("The district court's recitation of these matters in its ruling is not a substitute for the required appellate record.").

Sanchez also asserts that he "has always maintained health insurance" for his children, pointing to an insurance card admitted as an exhibit at the hearing. Relying on another exhibit—a January 2024 letter from the board of trustees for the Carpenters & Joiners Welfare Plan—Sanchez contends that "beginning July 2024, [he] pays $1,425 per month for the health care benefit plan which covers himself and his four (4) children."  Yet, as child support services points out, the insurance card does "not provide dates of coverage or the costs or details of any purported plan."  And while the letter states that "[e]ffective for coverage month

---

[5] Sanchez has three other children, who are the subject of support orders in two other cases.

July 2024, the monthly Dollar Bank Charge will increase from $1,375 to $1,425," child support services is correct that it does not

> show [Sanchez's] name, does not show what kind of plan it refers to, does not describe what a "Dollar Bank Charge" is or who pays that charge, does not state how much of the $1,425.00 amount comes from [Sanchez's] pocket, does not state the names of children who are or could be covered, and does not even state that it refers to a health care plan. More importantly, if it is a health care plan, it does not state how much would be charged for family coverage and single coverage so that the court could determine that there is a plan that is available and that it is at a reasonable cost.

Although some of these factual gaps might have been addressed at the hearing, we "may not speculate as to what took place or predicate error on such speculation." *F.W.S.*, 698 N.W.2d at 135; *accord Weakley v. Yetmar*, No. 20-0274, 2021 WL 210751, at *1 (Iowa Ct. App. Jan. 21, 2021) ("While some facts can be determined from the exhibit evidence, without the trial transcript, we are without a full picture and are unable to adequately determine the facts underlying [the appellant's] claims."). This includes Sanchez's assertion that he consented to providing health care coverage for the child. *See* Iowa Code § 252E.1A(3)(a)(2).

Bottom line, it was Sanchez's "duty to provide a record on appeal affirmatively disclosing the alleged error relied upon." *F.W.S.*, 598 N.W.2d at 135; *see also* Iowa R. App. P. 6.803(1). Absent that full record, we must affirm. *See id.*; *accord Miller*, 2024 WL 3518280, at *2 n.5 (collecting cases holding the same).

**AFFIRMED.**